Good morning, everyone. Welcome to the Ninth Circuit. We are delighted to see you here. Judge Smith and I would like to extend a special welcome and a special thanks to Judge Selna, who's sitting with us by designation from the Central District of California. We're very grateful that you're willing to sit with us. All right, we will hear the cases in the order that they appear on the calendar, and the first case for argument is Mesta v. Myrick, if you will. Good morning, Your Honors, and may it please the Court. My name is Christina Hellman, and I represent the petitioner, Luis Mesta. I plan to reserve about two minutes for rebuttal. This litigation has become quite complex, but at the core, it's not. Mr. Mesta's appellate attorney failed to include an argument that would have won his client a new trial. That's a classic Strickland violation. Despite that, the state court unreasonably denied relief, and it did so engaging in post hoc rationalization, which is prohibited under Strickland. Let me ask you a question. Is there a Supreme Court case other than Strickland that you'd have me review that would suggest that what the state court did in this situation was wrong? Yes, Your Honor. What one? I would point you to Hinton v. Alabama as one, which talks about the duty of counsel to understand state law. I understand the duty of counsel, but I guess here we have a situation where it's a state evidence rule. The state had suggested that the evidence rule ought to be one way in Santa Cruz and Wilson, and then they changed their mind, said it ought to be another way when they came and looked at it in the Supreme Court. You had the opportunity to challenge this in front of them, and they denied relief every time. Full well looking at the same arguments, you're now looking at me. And it's a state rule. I'm trying to figure out why then I have a federal violation. I have several points in reply, Your Honor. First of all, this state has affirmed that an ineffective assistance of counsel claim, which is decidedly federal, can be based on counsel's failure under state law. Well, I understand that, but when the state suggests that it isn't ineffective assistance of counsel under the state law, then why is it something that is of concern to me? When I didn't make the rule, and I've got absolutely no federal case which suggests that there is such a rule. Because, Your Honor, at its core, this is a situation in which the attorney chose a path. Well, I understand the attorney chose the path. I'm not trying to get to that because we could argue about that, too, but I'm just trying to take an overall look at it, look-see. And I'm saying to myself, it isn't as if the state didn't understand what you're presenting. It isn't as if this state didn't understand that the Court of Appeals had gone one way, and this is why counsel did what he did, and we changed it, and then we're not going to allow this. Looking at Strickland the same way I would look at Strickland. And then I'm supposed to say it's an out-and-out one federal case suggesting it. Your Honor, I disagree that the state court understood the claim and ruled on it correctly under Strickland. Why? Because when they ruled, they ignored counsel's explicit statements about what he did and why, which were in the record, and they invented arguments about the relative merits of the claims that counsel never made. Strickland and all of the cases after have repeatedly said, and this court has repeatedly said, that post hoc rationalization and ignoring what counsel has explicitly said is not permitted. Counsel didn't say, I made a strategic decision. In his pleadings to the Oregon Supreme Court in a last-ditch effort to gain Mr. Mesta the relief he deserved, counsel said, I tried, I thought I did what I, I recognized this other issue. I tried to obtain relief on the basis, but I framed the issue incorrectly. Please don't make my client have to bring a challenge of ineffectiveness assistance against me. The honest truth that comes, that I'm not, that's not the first time, I mean, I'm not at this for the first time. It seemed to me that many times when they were after ineffective assistance of counsel in my trial court, after they've come in and argued what they've argued, and they want to save their client, they come up with all kinds of ideas why their conduct was bad at the time. But at this particular instance, it isn't as if they didn't even say there was a problem. He did. He suggested that there was a problem. He just went at it from a different point of view. He went at it saying that it was an impermissible comment on the credibility. And that seemed, based on the cases in front of him, to be the best way to approach the situation. Your Honor, once the Oregon Supreme Court granted review in Southard, that analysis, which was not what counsel did, that analysis no longer holds. Well, but just a minute. When you say once the Supreme Court announced that it would review, once the Supreme Court renounced it would review, it said there were three different things it would look at. Correct. Did it say it would come out in any one of those ways? No. And did he not, in his direct appeal and in his other appeals, suggest this impermissible comment, which was one of the ways the they were going to look at it? Didn't he make that appeal? He raised only one of the preserved challenges to the harmful testimony. He left the other one on the table for no reason. And, Your Honor, the fact that he didn't know is actually even more a problem because the attorney is not the decision maker. It's the court. The attorney doesn't decide how a case comes out. The attorney's job is to present the issues to the court. And so what do I do with the press release that came out with this announcement where it said practitioners should not rely on the statement of issues to be decided as indicating the questions the Supreme Court will consider? Two answers to that, Your Honor. First of all, the Oregon Court of Appeals and Mr. Mesta's published opinion relied on that as something that an attorney could know, could rely on, excuse me, in terms of what the issues were. But second and most importantly, counsel was aware of the southern issue in the litigation because it originated out of his own public defender's office. This was not some kind of a tangential litigation happening in a separate state or in a different court system or some. Uh, this was integral to what was admits he knew about it. He admits he tried to raise it and he failed. That he didn't raise the 403. That's correct, Your Honor. He admits he tried to raise what was ultimately decided in Southern, which was based on Rule 403. Didn't he take efforts after Southern came down to recall the decision into advance his position at that point? Yes, Your Honor. He did that also untimely by six months and in a in an ineffective way, and it was ultimately denied because that was not the appropriate method to, um, to advance that claim. You mean it wasn't the appropriate? It was the only way he had left, and they did it on plain error of you, which to my to my theory generally goes to this general Strickland claim was not only denied by the Court of Appeals is denied by the Supreme Court. The motion to recall the appellate judgment was denied by the Oregon courts because it was significantly untimely. They did not reach the merits of what he was presenting, and if he had truly tried to be an effective advocate, he had multiple other timely ways, including 12 days after his opening brief was filed. He could have filed a supplemental brief, or he could have filed a motion to amend the brief to include all of the issues that he knew were now under consideration by the state Supreme Court. If the court has my best or we overtime, what's my best theory or case for the idea that counsel should have anticipated this change? Your Honor, I would submit that this is not a case about anticipating a change in the law. It certainly is a change, and it certainly is something that he should have anticipated, or at least your argument seems to be should have anticipated based on this. Somehow this press release that he got. So what's your best case that he should have anticipated this change? It seems to me Lowry is dead on. He shouldn't have anticipated any change and especially not a change that was so substantial as this. Your Honor, I have a couple points in reply. It's going to take me over my time. I get one thing that you get to answer my question, even though the chief can cut you off, you get to answer my question. Hopefully that won't happen to me today, Your Honor. Um, I have a few points in reply to that. Um, Lowry is completely distinguishable because of the situation that Mr Lowry was in. That is what I was talking about. You're gonna distinguish it on the facts. Yes, I think the facts are critical in this case. That's what I think is also incredibly important for this court to understand is that this is a unique factual situation. Given the timing, given what counsel did, given what he said, yes, Lowry is completely distinguishable on the facts. And then it's my argument, Your Honor, is not that he failed to anticipate the law. Um, that's that's routinely rejected by the courts. This is a well, that's why you can't argue that. No, I would not be doing effective appellate advocacy if I was doing that, Your Honor. But what I'm saying is that this is actually, um, this is a failure of of advocacy on a claim you chose on it. He chose to challenge this incredibly damaging testimony. He recognized the harm that this caused in Mr Mesta's trial, and at the time he chose it, he used the only thing based on State v. Milbrand and State v. Keller that he could have used. It's only after put having this Supreme Court to see this Supreme Court announcement come out that he could have changed that. Isn't that correct? No, Your Honor, I disagree with that. He had the opportunity when he knew that all of these issues were now before the State Supreme Court, which is like the United States Supreme Court, a discretionary review. When that court reaches out to take something that's telling appellate advocates, Hey, wait, something is going to happen. Whether it's a clarification of the law, whether it's a change in the law, these issues are now in play. That's that's the difference. That's the distinction, and that is critical for appellate advocacy to know what's happening with that. Thank you. Thank you, Counsel. We'll give you some time for rebuttal. Let's hear from counsel for the state. May it please the court. Pinesh Shah for the state of Oregon. We asked the court to affirm the denial of habeas relief in this case. The district court should be affirmed under Edpa review because the state court's last reason decision did not amount to an unreasonable application of Strickland or any other decision of the United States Supreme Court. Petitioner false appellate counsel counsel for failing to raise a state law evidentiary argument that he admits at page 33 of his brief was controlled by unfavorable case law from the very court to which counsel was appealing. On post conviction review, the state court here concluded that appellate counsel performed reasonably by omitting that week argument in favor one of one that in the state court's view of state law was at least marginally more viable. Uh, in our view, that that conclusion was reasonable enough to warrant deference under Edpa. In our view, that is the end of the analysis. Is there any doubt in your mind that the Second League of Strickland satisfied here, namely prejudice? I think I think prejudice probably would be satisfied here. This seems like the kind of testimony that in court today would be an admissible. So yes, it seemed like you even conceded that didn't you in your brief? I probably did. I can't think of a good reason not to at this moment. Well, I have a very different view of the case, maybe from my colleagues, because this strikes me as a pretty clear cut error on the state court's part. I'd love to hear more from you on this. You both the state court and you and your brief argued this mainly as a failure to anticipate a change in the law kind of case. And it seems to me that's exactly the wrong framework, the wrong lens through which to view this particular case. As you've heard your opponent say, what counsel did wrong here was not to increase the odds of prevailing in the Oregon Court of Appeals. You can't fault him for just raising the vouching issue and not the 403 issue when you're talking about the Oregon Court of Appeals. If that's all we were talking about, I think you would be in a very strong position. But what is different about this case is precisely what your opponent was stressing, is that the grant of review by a higher court just 12 days after filing the opening brief. So I guess my question to you is, what possible strategic judgment could counsel have made once he saw that, oh, there are actually three different questions presented? So I think a few answers. I think that, as Ms. Hellman points out, appellate counsel here has said that he, throughout this case, was trying to raise the issues in Southard. And I think what the Court of Appeals held on post-conviction review was that what he did is what most people thought was gonna happen in Southard. There were three issues on which it had presumably granted review, but as the Oregon Court of Appeals said in footnote six of the Mesta opinion at 261 ORAP 759, it wasn't clear from the briefing or the petition that the OAC 403 issue, which is the issue that was omitted, was really gonna be a large part of the analysis. Most of the briefing, most of the attention was devoted to this other issue. And on that other issue, there was already case law. There was Keller, where the Oregon Supreme Court had already said, this type of testimony isn't admissible, whereas no court in Oregon had ever made this kind of ruling under OAC 403 with respect to this type of evidence. And so most practitioners in the Court of Appeals, in the view of the two judges who rejected this claim, and in my view, would have viewed Southard as more likely to turn on this vouching issue. And that's the judgment that, in our view, Appellate Counsel must have made. And I think it's consistent with the record, because when Appellate Counsel said, I was trying to raise a Southard issue, what he means is, I raised the issue that I think Southard was gonna be decided on, and everybody was blindsided by the way this case ultimately was decided. Yeah, but that doesn't... It would be one thing, I guess, if the grant of review from the Oregon Supreme Court didn't make clear that actually there were these two distinct grounds. Again, if that were the case, I think you'd be in a strong position. But once the Oregon... Excuse me, the Oregon Supreme Court itself says, there might be, in fact, two separate, totally distinct grounds on which we might rule in the defendant's favor, and you as Appellate Counsel know, or this was debatable, but the Oregon Court of Appeals resolved this against you, and you know that your trial counsel has preserved both of those grounds, and that you've only raised one. There, in my mind, is no possible strategic downside to asking the Oregon Court of Appeals to amend your opening brief, so you present both. Maybe you add only three pages of additional argument, just like, I guess, occurred in the Southard case. But there's no downside. The only thing you are doing is trying to preserve the upside of... Because you don't know which of the two grounds the Oregon Supreme Court might rule on. So I think I'll preface my argument by saying, I don't think that the strict analysis is whether there's any downside, because otherwise, Appellate Counsel would be required to raise every claim. I think that they're required to raise meritorious claims. I take your argument to be, or your question, Your Honor, to be, if the review states this is an issue that has some viability, then counsel should view it as relevant. And my answer to that is, that turns on some elements of state law that are a little bit esoteric, and I'll try to explain them, which is that OEC-403 is typically reviewed for abuse of discretion, which is to say, it's usually not a good avenue for appellate relief. When Southard was decided under 403, it was decided not under an abuse of discretion standard, because the Oregon Court of Appeals and the Oregon Supreme Court views 403 differently when we're talking about scientific evidence. In Southard, they said, this is an issue about scientific evidence. Scientific evidence is governed by three rules. OEC-401, it has to be relevant. OEC-702, it has to be scientifically valid and helpful to the jury. And then OEC-403, more prohibitive than prejudicial. And in that context, Oregon courts apply OEC-403 as a matter of law in order to achieve uniformity, because for scientific evidence, they want particular species of scientific evidence to be either admissible or inadmissible in all cases, rather than based on the facts of each case. Normally, OEC-403 is sort of a fact-intensive inquiry. Importantly, in this case, although Petitioner preserved his OEC-403 argument, he preserved it as a naked OEC-403 argument, which is to say it would have been reviewed for an abuse of discretion. What he did not preserve was an argument that this was scientific evidence. In the dissent in the Oregon Court of Appeals, Judge Nakamoto says that that issue was not preserved. I understand the Court of Appeals... I don't see how this helps you, because that goes to prejudice. And you've conceded that prejudice would be shown here, right? All I'm saying is that he failed to preserve a ground on which, under your concession, he would have gotten a new trial. So everything you just said for the last two minutes, it seems to me, is totally besides the point on the deficient performance problem. I think prejudice always informs deficient performance. Even if we can say now, today, looking at Southard, this is a viable claim, stepping into the shoes of counsel at the time he was making this decision, he would have seen this as a claim that, at best, would have been reviewed for abuse of discretion because he wasn't able to present it in a way that it would have been reviewed under any other standard of review. But, okay, but all I'm saying is that he had a second ground on which to get the exact same relief. All he had to do was add a couple of pages of argument to his opening brief. And I would submit to you, there is zero downside to doing that because you are not diminishing the chances of your prevailing in the Oregon Court of Appeals. That's already pretty much a lost cause from, in terms of what Well, I think part of the strategic judgment has to be, is this a claim that is likely to succeed? Not just, do I lose anything by filing it? And I disagree that, at the time that counsel was acting, this claim was indistinguishable from Southard because, in Southard, the 403 issue was presented within the context of an argument about scientific evidence, whereas, in this case, that was not true. Now, it But the Oregon Court of Appeals here said that he had, in fact, preserved, trial which mapped onto the two distinct grounds that the Oregon Supreme Court said it was going to review. So, again, I return to this distinction that I'm making between a naked 403 objection, which was preserved. That's what was preserved here, a naked 403 objection, as opposed to one And you're saying that's different from the 403 issue that the Oregon Supreme Court said it would review? That's different from the issue that was presented in Southard. So, then, why are you conceding prejudice? Your position should then be, well, it wouldn't have mattered, because even if he had amended his opening brief to raise the preserved 403 argument, he wouldn't have gotten relief anyway, because the Southard decision rested on some totally different ground. You're saying exactly the opposite, which is why I'm saying, given that you've conceded prejudice, you can't possibly win on deficient performance on this basis. The reason that I'm conceding prejudice is because, as Southard has been applied in future cases since Southard, the Court seems to have agreed that a naked 403 objection is sufficient. So, today, a naked 403 objection would be sufficient. But what I'm saying is, in 2009, that would not have been apparent. And so, that's the question we have to ask. So, when I'm talking about prejudice, I'm saying, you know, if we look at the law as it is now, this evidence, even under a naked 403 objection, would have to be rejected. But I don't think that was clear at the time. I got you. I got you. And so, on that question, ultimately of state law, our state court looked at the evidence, and it was not clear. And I would point the Court to footnote 6, where they talk about how this 403 claim in Southard fit into the existing framework of the law as it existed in 2009. And that assessment of state law by state courts is precisely what this Court owes a deference to under AEDPA. And, for that reason, this Court should affirm, unless it has further questions. Okay. Thank you. Thank you. Let's give you two minutes for rebuttal. I have two brief points. First of all, it doesn't matter what most people would have done or thought. What we are reviewing in this case is what this attorney did in this case for this client. And what he did was ineffectually litigate the argument and issue that he did raise. If, as this analysis, under the Brown test, is a, you know, relevant scientific evidence and then prejudicial and probative, why on earth would you leave out one of the elements of a three-part test that have to come together? And I will point this Court to Excerpt of Record, page 236. Counsel says, speaks about his familiarity throughout the life of this appeal with the litigation in Southard and his attempt to obtain relief for the defendant on ultimately the same basis as Southard. He tried, he failed, he was ineffective, and he detrimentally prejudiced his client. What's your response to your opponent's argument that at the time of the granted review in Southard, not from today's vantage point, given what we know about how the law progressed, but at the time review was granted, reasonable appellate counsel would have looked at the preserved 403 challenge that his trial counsel had made, compared it to the 403 issue that the Southard Court had granted review on, and would have said, these aren't the same thing, so I basically don't have anything to work with. That is what I understood his argument to be. What's your response? Two points in response, Your Honor. First of all, the Oregon Court of Appeals explicitly held that counsel had preserved the 403 issue that was presented in Southard. So the nuances of the standard of review under which that claim would be reviewed were not, either were not important to the court or were not something that the Oregon Court of Appeals in Mr. Mesta's case discussed. And that kind of dovetails into my second point, which is a potentially unfavorable standard of review, whether it's, oh, this is going to be abuse of discretion, that's going to be, you know, a clear error. Again, if you don't know how the court is going to rule, but you know they've taken review on a claim that is preserved and tied into what you are raising, effective appellate advocacy demands that you also raise that claim, because what you are doing is preserving your client's chance for a new trial. It doesn't, it's not, the nuances come later. They don't come before. Okay, thank you very much. Appreciate your arguments. The case just argued is submitted.
judges: N.R. Smith, Watford, Selna